LILLISTON IMPLEMENT COMPANY and Lehman Equipment Co.,
Plaintiffs,

v.

E. L. CALDWELL & SONS, INC.,
Defendant.

Civ. A. No. 2094.

United States District Court
S. D. Texas,
Corpus Christi Division.

Dec. 5, 1962.

Browning, Simms, Hyer & Eickenroht, Marvin B. Eickenroht, Houston, Tex., Edward Taylor Newton and George M. Hopkins, Atlanta, Ga., and Keys, Russell, Keys & Watson, M. W. Meredith, Jr., Corpus Christi, Tex., for plaintiffs.

Wynne & Finken, and B. P. Fishburne, Washington, D. C., and Kleberg, Mobley, Lockett & Weil, M. Harvey Weil, Corpus Christi, Tex., for defendant.

GARZA, District Judge.

This is a patent suit in which the owners of the patent and the exclusive licensees are suing the Defendant, not only for patent infringement, but also for unfair competition and false marking of a patent number.

There is no question that this Court has jurisdiction of the parties and of the subject-matter of this suit under the appropriate statutes of the United States.

The patent in suit is United States Patent No. 2,994,387, issued on August 1, 1961, on an application filed June 12, 1961, by Charles L. Lehman and Alvin H. Lehman, and is a patent on a rotary cultivator making use of gangs of rotary hoes that not only cultivate over a row of growing crops, but also adjacent to each side of the growing crops. The patentees call it a "once-over all-over" cultivating machine. The patentees, Charles L. Lehman and Alvin H. Lehman, as co-inventors, filed several applications before the Patent Office, seeking a patent on their rotary cultivator. On April 1, 1958, the patentees filed two applications with the Patent Office, being Applications Serial Numbers 725,640 and 725,641. These first applications were abandoned and the patentees then filed Application Serial No. 800,304 on March 18, 1959, which said application they designated as a continuation in part of the two abandoned applications filed April 1, 1958. On September 7, 1960, they filed Application Serial No. 54,468 which dealt with the same type of cultivator, except a different phase of the same. They finally filed their Application Serial No. 113,993 on June 12, 1961, which was a continuation of the applications filed March 18, 1959, and September 7, 1960, and it was on this last application that United States Patent No. 2,994,387 was issued to the Lehmans. The patent in suit, therefore, has a large file history in the Patent Office, all of which file wrappers have been introduced as evidence in this suit.

The patentees, Charles L. and Alvin H. Lehman, assigned the patent to the Plain-

tiff Lehman Equipment Co., and the Lehman Equipment Co. gave an exclusive license to Lilliston Implement Company, a Georgia corporation, for an advance royalty payment of $100,000.00 and provision for future royalties on cultivators sold by Lilliston. Lilliston started to manufacture the cultivator described in the patent in suit, and has since paid Lehman Equipment Co. in excess of $17,000.-00 as additional royalties.

The Lehman Equipment Co., one of the plaintiffs herein, sold their cultivator which they designated with their trademark of "Roll-N-Cultivator", from sometime in 1959 until 1961. In January, 1961, they granted the exclusive license to the Plaintiff Lilliston Implement Company and also assigned to them the use of the trademark "Roll-N-Cultivator".

Lehman Equipment Co., as assignee of the patent, and Lilliston Implement Company, as exclusive licensee, have a right to jointly bring this suit against the Defendant.

The Defendant, E. L. Caldwell & Sons, Inc., a Texas corporation with its main office in Corpus Christi, Texas, late in 1961 began the manufacture and sale of the cultivator charged with infringing the patent in suit, the first sale of any of their alleged infringing machines being in October, 1961.

The Defendant has answered the Plaintiffs' suit by denying any infringement, any unfair competition, any false marking, and is also maintaining that the patent is invalid. They also have invoked the doctrine of file wrapper estoppel, and have alleged before the Court that under this doctrine the Plaintiffs have limited themselves to a cultivator whose gangs of rotary hoes are individually pivotally mounted and that are each separately free-floating.

The patent in suit has twenty-six (26) claims, but the Plaintiffs are claiming infringement of only Claims 8, 10, 11, 12, 13, 20, 21, 22, 23 and 24. These claims read as follows:

"8. A cultivator, comprising a frame adapted to be moved forwardly over the ground, separate gangs of rotary hoes individually mounted on the frame for swinging about a transverse axis to rotatably engage spaced-apart rows of crops in a laterally extending row during forward movement of the frame, additional separate gangs of rotary hoes individually mounted from the frame for swinging about a transverse axis to rotatably engage the ground between the rows of crops rearwardly of the engagement of the hoes of the first-mentioned gangs therewith during forward movement of the frame, and means for adjusting the angular relation of the path of rotation of the hoes of each gang with respect to the forward movement of the frame.

"10. A cultivator of the character defined in claim 8, wherein the additional gangs include a pair of gangs engageable with the ground between adjacent rows of the crops engaged by the first-mentioned gangs and swingable between convergent and divergent positions.

"11. A cultivator of the character defined in claim 10, including means for adjusting and fixing the angular relation of each gang of each pair of gangs with respect to the ground level between positions tilted from one side to the other of a level position.

"12. A cultivator of the character defined in claim 10, wherein the gangs of each pair are mounted to engage the ground in longitudinally offset relation with one another.

"13. A cultivator of the character defined in claim 8, including means for adjusting the position of each additional gang laterally of the frame.

"20. A cultivator, comprising a frame adapted to be moved forwardly over the ground, a gang of rotary hoes mounted on the frame for swinging about a transverse axis to rotatably engage a row of crops dur-

ing forward movement of the frame, a pair of additional gangs of rotary hoes each mounted from the frame for swinging about a transverse axis to rotatably engage the ground on each opposite side of the row of crops and rearwardly of the engagement of the hoes of the first-mentioned gang therewith during forward movement of the frame, and means for adjusting the angular relation of the path of rotation of the hoes of each gang with respect to the forward movement of the frame.

"21. A cultivator of the character defined in claim 20, including means for adjusting and fixing the angular relation of each gang of said pair of gangs with respect to the ground level between positions tilted from one side to the other of a level position.

"22. A cultivator, comprising a frame adapted to be moved forwardly over the ground, a gang of rotary hoes, means pivotally mounting the gang from the frame for swinging about a transverse axis to rotatably engage a row of crops during forward movement of the frame, means for swinging the gang about a vertical axis to adjust the angular relation of the path of rotation of the hoes of said gang with respect to the forward movement of the frame, a pair of additional gangs of rotary hoes, means pivotally mounting each such additional gang from the frame for swinging about a transverse axis to rotatably engage the ground on each opposite side of said row of crops during said forward movement of the frame, and means for swinging the gangs of said pair about vertical axes between positions in which the paths of rotation of the hoes thereof are rearwardly convergent or divergent.

"23. A cultivator of the character defined in claim 22, including means for adjusting and fixing the angular relation of each gang of said pair of gangs with respect to the ground level between positions tilted from one side to the other of a level position.

"24. A cultivator of the character defined in claim 23, including means for adjusting each gang of said pair of gangs laterally of the frame."

Claim 8 is a parent claim, and Claims 10, 11, 12 and 13 are dependent upon it. Claim 20 is also a parent claim, and Claim 21 is dependent upon it. Claim 22 is a parent claim, and Claims 23 and 24 are dependent upon it.

Plaintiffs, under their patent, are manufacturing a one-row cultivator with a front gang of rotary hoes that travels over the row of crops and which is pushed as it moves forward. It has two rear gangs of rotary hoes that are individually pivotally mounted, which engage the ground on either side of a row of crops, and which rear gangs of rotary hoes are free-floating separately of each other. This one-row machine can be multiplied to a multi-row machine by extending the frame which the tractor pulls, and adding several one-row cultivators to the frame.

The accused structure, on the other hand, has a front gang of rotary hoes that goes over the crop, which is pulled instead of pushed, and the two rear gangs of rotary hoes that engage the ground on either side of the row of crops, although individually mounted, are not separately free-floating since they both must go up or down simultaneously since they both have the same pivot point for swinging about a transverse axis.

Although the specifications of the patent in suit and the applications filed by the patentees talk about a "pushed", instead of "pulled", front gang of rotary hoes going over the crops, the claims in suit themselves make no distinction as to whether the front gang of rotary hoes that engages the row of crops is pushed or pulled. So this difference in the construction of the patented machines and the accused structure of the Defendant is of no concern.

Claim 14 of the patent, which reads as follows:

"14. A cultivator, comprising a frame adapted to be moved forwardly over the ground, a plurality of separate gangs of rotary hoes, means individually pivotally mounting the gangs from the frame for swinging about a transverse axis to rotatably engage spaced-apart rows of crops in a laterally extending row during forward movement of the frame, means for swinging the gangs about a vertical axis to adjust the angular relation of the path of rotation of the hoes of each gang with respect to the forward movement of the frame, additional separate gangs of rotary hoes, means individually pivotally mounting such additional gangs from the frame for swinging about a transverse axis to rotatably engage the ground in pairs rearwardly of and laterally intermediate the engagement of the first-mentioned gangs with the rows of crops during said forward movement of the frame, the gangs of each pair being longitudinally spaced of one another, and means for swinging the gangs of each pair about vertical axes between positions in which the paths of rotation of the hoes thereof are rearwardly convergent or divergent."

is not alleged to be infringed, but the Defendant insists that this Court must look at that claim in order to decide properly on its claim of file wrapper estoppel.

As stated before, the Defendant is claiming that the gangs of rotary hoes which engage the ground adjacent to the row of crops on the patented machine have to be individually pivotally mounted to be free-floating separately from each other; that the patentees, in order to get around cited prior art in the perfection of their patent applications limited themselves to this construction of their cultivator, and that they are estopped to allege that they have a patent on a cultivator that does not carry this feature; that since the accused cultivator does not have this feature, but its two rear gangs that engage the ground on opposite sides of the row of crops are not separately free-floating, they cannot be guilty of infringement.

It is the position of the Defendant that because of file wrapper estoppel, the terms "individually" and "each" must limit their claims to preclude the Defendant's accused structure in which the two rear gangs are tied together and ride up and down together.

The Plaintiffs, on the other hand, contend that the claims in suit, when given a normal and usual interpretation, define the accused structure without resort to equivalence or equivocation, and hence no file wrapper estoppel is present. They also say that if there is a question of file wrapper estoppel, it does not so limit the claims in suit as to preclude the accused device.

The determination of whether there is an infringement or not then turns on the meaning of the word "individually" before the word "mounted" in Claim 8, and the meaning of the word "each" before the word "mounted" in Claim 20, and the meaning of the word "each" after the word "mounted" in Claim 22.

The Defendant argued, in urging file wrapper estoppel on the Court, that when the patentees filed their Application Serial No. 800,304, they amended their Claim 12 of said application (which later became Claim 14 of the patent in suit) by the insertion of the term "individually" before "pivotally", and that this limited Claim 12 (now Claim 14 of the patent in suit) to a cultivator in which the rear gangs are mounted on the frame on individual pivots; that Claim 8 of the same application, which is the same as Claim 8 of the patent in suit, was at the same time amended by the insertion of "individually" before "mounted", and that Claim 8, therefore, means the same thing as Claim 12 (now Claim 14 of the patent in suit); that is, that it requires that the rear gangs swing from the frame on individual pivots; that by virtue of the specifications of the patent in suit, in view of the remarks and arguments by

Lehmans' attorneys, the expression "free-floating" used in the specifications, but not in the claims in suit, means the same thing as individually pivotally mounted, so that in using such expression the Lehmans were distinguishing prior art in which gangs were connected for swinging with one another. They also say that when Claims 20 and 22 were added to the Application Serial No. 113,913, which resulted in the patent in suit, Lehman asserted to the Patent Office that these claims were "similar" to Claims 8 and 14 (formerly Claim 12), so that the term "each" (second occurrence) in Claims 20 and 22 means the same thing as individually, and therefore also requires that the rear gangs swing from the frame on individual pivots.

Claim 14 of the patent in suit, as quoted above, shows that the rear gangs that engage the ground on either side of the row of crops must be individually pivotally mounted, and therefore that claim is not in suit as it cannot be read on the accused structure. The only reason the Court is discussing Claim 14 of the patent in suit, is because, as stated above, the Defendant urges on the Court that it must be looked into to give their file wrapper estoppel theory of their defense the correct interpretation.

The Defendant claims that since the word "individually" was simultaneously added to Claim 8 of Application Serial No. 800,304, from which patent Claim 8 originated, it carried the same meaning to Claim 8 that it had in Claim 12 (now Claim 14). The word "individually" in Claim 8 modifies the word "mounted", and the rear gangs of the patented machine and the accused machine that engage the ground adjacent to the row of crops are individually mounted. Claim 14 calls for a machine in which the rear gangs that engage the ground on either side of a row of crops must be individually pivotally mounted.

■  It is a well-established rule of construction that a broad claim will not be construed to contain limitations expressed in the more narrow claims. The reason for the rule is that each claim is in theory a separate patent, so that no two claims should be so construed as to make them identical. Cameron Iron Works, Inc. v. Robert O. Stekoll, 242 F. 2d 17 (5th Cir., 1957), and cases therein cited.

This Court cannot, therefore, hold that Claim 8 requires that the rear gangs be individually pivotally mounted. All it requires is that they be individually mounted from the frame to permit their individual adjustment such as angling, tilting or lateral movement. This Court cannot read into Claim 8 any such interpretation of the word "individually" as the Defendant would have it do.

The patentees of the patent in suit were seeking a patent on a cultivator for "once-over all-over" cultivation which allowed a row of growing crops to be cultivated without the destruction of the same, as well as cultivating the ground on either side of the growing row of crops, which would allow dirt to be thrown on the crops or away from them. This is what they were seeking a patent on as a novel invention, and that is what they obtained from the Patent Office.

■  It is true that the attorneys prosecuting the patent applications of the patentees talk about free-floating rear gangs and gangs that were able to go up and down separately of each other, but this was only a preferred form of their invention, and their reference to a specific aspect of the invention does not limit the broader principles and main objectives of their claims. 2 Walker on Patents, sec. 256 and sec. 241; Edward Valves, Inc. v. Cameron Iron Works, Inc. (5th Cir., 1961), 286 F.2d 933.

The same thing the Court has said with regard to "individually" in Claim 8, applies to the word "each" in Claims 20 and 22.

■  There is no question that Claim 8 of the patent in suit reads on the accused machine of the Defendant.

As stated in Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097,

"In determining whether an accused device or composition infring-

es a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it."

■ All the Defendant has done with its accused machine to distinguish it from the machine being manufactured under the patent, is to pivotally mount the rear gangs together so that the two rear gangs of a single unit pivot together. This, too, as a matter of law does not avoid infringement. As stated in Walker on Patents (Deller's edition), p. 1698, sec. 462, an infringement is not avoided by uniting two elements of a machine or manufacture into one integral part, if the united part performs the same function in substantially the same way as did the separate parts before the union.

■ There is no question that the accused device performs the same function, in substantially the same way, as the machine manufactured under the patent.

If Claim 8 is infringed, so are also Claims 10, 11, 12 and 13, as well as Claims 20, 21, 22, 23 and 24.

I find no file wrapper estoppel as claimed by the Defendant, since the patentees never amended Claim 8 to distinguish over the prior art so as to require individually mounted and separately free-floating rear gangs, and Claims 20, 21, 22, 23 and 24 were never amended at all.

We now touch on the claim of invalidity, made by the Defendant.

There is no question that the patent in suit involves an invention which has been made in a very highly developed and crowded field. The Defendant cited more than 80 prior art patents and publications, but at the trial relied mainly upon the Bonds Patent No. 1,249,008, issued in 1917. This patent discloses a cultivator in which a plurality of single "toothed discs" are suspended from a frame in transverse alignment. Each disc is supported by a vertical rod carrying a sleeve which, in turn, is supported by a pull bar. The end of each pull bar is provided with an eye which is journalled on a common

transverse rod of the frame of the cultivator.

The Bonds patent was not cited by the Patent Office against the patent in suit. This fact alone does not invalidate the patent in suit unless it is shown that it in fact anticipates the patented device.

This Court finds that the Bonds patent does not anticipate the patent in suit. The Bonds patent does not teach the use of gangs of rotary hoes, some in front and some in the rear, nor any teaching with regard to the gangs of rotary hoes throwing dirt on or throwing dirt away from a row of crops. The Bonds patent could not cultivate rows of growing crops in a "once-over all-over" cultivation operation as invented by the patentees in this case. Apparently the Bonds machine did not achieve any commercial success, whereas the machine of the patent in suit has achieved wide commercial success.

This Court cannot hold, and does not find, that a farmer with ordinary skill could convert the Bonds machine into a cultivator of the type of the patent in suit. I, therefore, find no anticipation in the prior art of the cultivator contemplated by the patent in suit.

There is nothing in the evidence that will rebut the presumption of validity of the claims in suit, as well as Claim 14 which has also been attacked by the Defendant.

The Defendant also claims that there is lack of invention and novelty in the patent in suit. With this, this Court cannot agree. Although the cultivator patented by the Lehmans shows a combination of elements previously used or tested, their arrangement of these elements was novel, and it was not a combination that would be obvious to the ordinary farmer. The cultivator patented by the Lehmans is one that has revolutionized the cultivation of growing crops.

We now look at Count Two of Plaintiffs' Complaint, being unfair competition on the part of the Defendant.

The Defendant, E. L. Caldwell & Sons, Inc., prior to manufacturing the accused

cultivator, had received verbal permission to use Miller Patent No. 2,539,632, and later received written license from the holder thereof to manufacture the Caldwell-Miller row disc which is a combination of rear gangs of discs mounted in pairs to float as a unit on each side of a row with a crop sweep shank up front to enable the digging of old plants. The Caldwell-Miller row disc was never contemplated for "once-over all-over" cultivation on growing crops, for the sweep shank in front, or another gang of rotary discs, would have destroyed growing crops, instead of cultivating them. When the Defendant started manufacturing the accused cultivator, they put on the same the Miller patent number. They claim that they had a right to do this; that all they did to the Caldwell-Miller row disc was to exchange the front sweep shank to a gang of rotary hoes, and the rear gangs of discs to rotary hoes. They first called it a rotary cultivator, but then adopted the name "Rolling Cultivator" in their advertisements. The Plaintiffs claim that they were the first to use "Rolling Cultivator" as describing their machine and its equivalent "Roll-N-Cultivator" which was used by the Lehmans when they first manufactured their rotary cultivator. The Plaintiffs have asked for a trademark certificate on "Rolling Cultivator" and "Roll-N-Cultivator", but at the time of trial these applications were still pending.

The charge of unfair competition on the part of the Plaintiffs, in substance, charges Caldwell with unfairly competing because of the use of the words "Rolling Cultivator" to describe their machine; that they copied both the functional and nonfunctional features of the Plaintiffs' cultivator, and that they placed the Miller patent number on their rolling cultivator with knowledge of falsity. They claim that these acts on the part of Caldwell are unfairly, falsely, fraudulently, unlawfully, and wilfully misleading and deceive the public. In addition, they claim that this deceit on the public is being carried on in the advertisements of the Defendant by the use of the same color scheme and the same format as the advertisements of Lilliston.

The Defendant admits that they did buy a gang of Lehman rotary hoes to experiment with before the manufacture of their accused machine. Plaintiffs claim that by using the Miller patent number on their accused machine, the Defendant has tried to create the impression on the public that they are the patentees of the "all new" "Rolling Cultivator".

From all the evidence before the Court, the Court finds no unfair competition as alleged, other than the fact that the Defendant is infringing the trademark of and competing unfairly with Plaintiffs by using the trademark "Rolling Cultivator" to designate its rotary cultivator. We find that the trademarks "Rolling Cultivator" and "Roll-N-Cultivator" are phonetic equivalents, and as applied to the cultivators of the Plaintiffs are suggestive of the fact that something rolls. "Rolling Cultivator" is not merely descriptive, but is sufficiently fanciful to acquire a secondary meaning and to be a valid trademark.

The Defendant corporation and its officers enjoy a good reputation, and I find nothing in the record to show any intent on their part to deceive. As long as they felt that their accused device did not infringe on the Lehman patent, they had a perfect right to use the Miller patent number on their accused device.

It is, therefore, the order of this Court, and the Court finds:

1. That it has jurisdiction of the parties and of the subject-matter herein.

2. That the accused device of the Defendant infringes the claims in suit, and that the Defendant should be, and is hereby, enjoined from any further infringement.

3. That the claims of the patent in suit are valid.

4. That there has been no unfair competition, except in the use of the trademark "Rolling Cultivator", and that the Defendant should not, and is hereby enjoined from using said term in the fu-

ture, as well as the phonetic "Roll-N-Cultivator".

5. That there has been no false marking of a patent by the Defendant.

6. That there has been no willful infringement.

7. That the Plaintiffs are entitled to an accounting and also damages for patent infringement from October 30, 1961, until final judgment, together with interest, and to an award of costs.

The amount and period of interest and attorney's fees under Title 35 U.S.C. § 285, are hereby specifically reserved until the accounting period.

This memorandum opinion will constitute the findings of fact and conclusions of law of this Court.

Clerk will notify counsel.