Robert W. CARVER and Diana Carver, Plaintiffs,

v.

VELODYNE ACOUSTICS, INC., Defendant.

No. C00–1194.

United States District Court, W.D. Washington at Seattle.

April 23, 2002.

James W. Anable, Jeffrey William Reis, Steven P. Fricke, Christensen, O'Connor, Johnson & Kindness, PLLC, Seattle, for Plaintiffs.

Brian G. Bodine, Seed Intellectual Property Law Group PLLC, Seattle, WA, Edward W. Bulchis, Paul T. Meiklejohn, Brian Chung Park, Dorsey & Whitney LLP, Seattle, WA, Theodore J. Bielen, Jr., Charles L. Thoeming, Bielen, Lampe & Thoeming, Walnut Creek, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LASNIK, District Judge.

This matter comes before the Court on defendant Velodyne Acoustics, Inc.'s ("Velodyne") motion to preclude plaintiffs Robert and Diana Carver ("the Carvers") from recovering profits allegedly lost by Sunfire Corporation ("Sunfire"). For the reasons explained below, Velodyne's motion is granted.[1]

### ANALYSIS

The Carvers are suing Velodyne for infringement of two patents on which Robert Carver is the named inventor. The Carvers are the sole owners of Sunfire, which, for the purposes of this motion, is assumed to manufacture and sell products that embody the patents-in-suit. The applicable damages statute reads in relevant part:

Upon finding for the claimant the court shall award the claimant damages ade-

---

1. Velodyne had requested oral argument on its motion. However, the Court has been sufficiently briefed by the parties through their written submissions. Velodyne's request for oral argument is therefore denied.

quate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. 28 U.S.C. § 284. It is undisputed that, under the statute, "[a] patentee may seek to recover ... the amount of profits actually lost". *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161 (Fed.Cir.1991). Here, however, the issue is whether the Carvers may recover the profits of Sunfire, legally a separate entity.

The Carvers have not disputed Velodyne's allegation that Sunfire is their non-exclusive licensee and have stated that they are not attempting to join Sunfire as a co-plaintiff. (Plaintiffs' Opposition at 2 n. 1.) The Federal Circuit has clearly held that a non-exclusive licensee, even one cooperating with the plaintiff, has no standing to sue for damages. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed.Cir.1995) (noting that such a "licensee [has] no right to sue for infringement at law in the licensee's own name"). The only remaining issue is whether the Carvers can recover Sunfire's profits despite the general rule that "[w]hen the patentee does not seek to make and sell the invention, lost profits are not an appropriate measure of damages." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed.Cir.1996).

In *Abbott v. Barrentine Mfg. Co.*, 255 F.Supp. 890 (N.D.Miss.1965) the plaintiff patentee granted a company, 98 percent of whose stock he owned, the exclusive license to manufacture and sell his invention. The case alleged infringement by a third party. The court stated that the plaintiff was entitled to an accounting to determine the reasonable royalty it could collect as damages. Then, the court added:

> That accounting, however, must, on the facts in this case, be limited to damages sustained by the plaintiff patentee as an

individual and may not, in any event, extend to or encompass damages which may have been sustained by the corporate sole licensee, since that licensee is not a party to this suit and the patentee may not recover such damages for his licensee

*Id.* at 901.

*Barrentine* thus indicates that Sunfire and the Carvers are to be treated separately for the purposes of calculating damages. However, it does not explicitly state that a corporation's lost profits may not be awarded to its controlling shareholder. That issue was decided by *Brookfield v. Novelty Glass Mfg. Co.*, 170 F. 960 (3d Cir.1909), which was squarely on point. In *Brookfield*, the plaintiff patentee, William Brookfield, was suing the alleged infringer not only for his own damages but also for profits lost by Brookfield Glass Company, in which he owned 1,370 of a total of 1,500 shares. Like Sunfire, the Brookfield Glass Company was a non-exclusive licensee that marketed the embodying product. The court held:

> [I]t was the Brookfield Glass Company, in any event, that was damaged, with which Mr. Brookfield individually had no concern. It may be that he failed by just so much of what he otherwise would have got in dividends, and that this would have been quite considerable, holding 1,370 out of a total of 1,500 shares, as he did. *But the distinction between corporation and stockholder, already recognized in another connection for the complainants' benefit, being preserved, he would not be entitled to assert as his own the profits lost to the company, nor to claim his unapportioned share of them, whatever that might be.*

*Id.* at 961 (emphasis added). The Carvers have not provided any authority suggesting that *Brookfield* is not good law today. Their contention that a different damages statute was applicable at the time *Brook-*

*field* was decided is correct but immaterial. In *Bott v. Four Star Corporation*, 807 F.2d 1567, (Fed.Cir.1986) (*overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1038–39 (Fed.Cir.1992)), both the patentee, Jack Bott ("Bott"), and its exclusive licensee, JAC Products, Inc. sued the alleged infringer. JAC Products, Inc. was a manufacturing subsidiary wholly owned by Bott. The Federal Circuit's discussion of apportionment of damages makes clear that manufacturers and sellers are entitled to lost profits whereas patentees are to be awarded reasonable royalties. *See id.* at 1570–71.[2]

■ The Carvers claim that the rule of *Abbott* does not preclude their entitlement to Sunfire's profits. For support of this proposition they cite to *Kalman v. Berlyn Corp.*, 9 U.S.P.Q.2d. 1191, 1988 WL 156126 (D.Mass.1988). In that case, the plaintiff patentee sold and manufactured his invention through a corporation, Process Developments Ltd. ("PDL"), that he was 50 percent owner of. *See id.* at 1192. In calculating damages, the district court, while quoting *Abbott*, stated: "Because PDL is not a party to this action, the Court finds that the damages to the plaintiff may be measured by plaintiff's entitlement to PDL's profits as a 50% shareholder in the company." *Id.* at 1194. On appeal, the Federal Circuit reversed the district court, stating that it had abused its discretion by not allowing the plaintiff to amend his complaint to include PDL. *See Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1480 (Fed.Cir.1990). Since this joinder would allow recovery of 100 percent of PDL's profits (on its own behalf), it did not decide whether the district court was cor-

rect in holding that the patentee was entitled to collect 50 percent of the profits of a licensee corporation. The Federal Circuit's decision in *Kalman* does not overturn the rule of *Brookfield*, implicitly reaffirmed in *Bott*. At most, *Kalman* stands for the proposition that a patentee can recover profits of a separate corporation that is an *exclusive* licensee. It therefore has limited applicability to the case before the Court.[3]

Finally, the Carvers claim that the specific corporate form they chose to manufacture and sell their invention makes a difference. They claim that "[u]nder the law, profits of Sunfire—as a subchapter-S corporation—are distributable to the Carvers in the same manner as they would be if Sunfire was a partnership in which the Carvers were only general partners. It therefore follows that lost profits of Sunfire is lost profit [sic] to the Carvers." (Plaintiffs' Opposition at 5.) Their reasoning is unpersuasive. They have pointed to no authority holding that the Court should treat subchapter-S corporations and partnerships the same for the purposes of collecting damages. In general, the law maintains the distinction between corporations and partnerships. General partners in a partnership are usually personally liable for the debts of the corporation. *See, e.g., Rathke v. Griffith*, 36 Wash.2d 394, 406–07, 218 P.2d 757 (1950). Shareholders in a corporation only have limited liability. *See, e.g., Frigidaire Sales Corp. v. Union Properties, Inc.*, 88 Wash.2d 400, 405–06, 562 P.2d 244 (1977). The Carvers may not, under the rule of *Brookfield*, take advantage of the corporate form and simultaneously shun its disadvantages. Had the Carvers made Sunfire an exclusive li-

2. The Federal Circuit disagreed with the trial court's factual conclusions in the case and overturned an award of profits where the manufacturer had not even competed for the business. *See id.* at 1571.

3. As noted above, the Carvers have not disputed Velodyne's contention that Sunfire is their non-exclusive licensee.

censee, it could be joined as a co-plaintiff. They may still be entitled to reasonable royalties associated with their dealings with Sunfire.[4] However, they are precluded from collecting Sunfire's lost profits under Washington law.[5]

## CONCLUSION

For the foregoing reasons, Velodyne's motion is GRANTED.

---

4. The Court does not decide this issue in this Order.

5. It should be noted that the Court's decision does not apply the rule of *Panduit Corp. v. Stahlin Bros. Fibre Works. Inc.*, 575 F.2d 1152 (6th Cir.1978). In that case, the court held that four factors were relevant to deciding whether lost profits should be allowed as a remedy for infringement. Application of the *Panduit* factors is a fact-based inquiry. *See, e.g., Kaufman Co., Inc. v. Lantech. Inc.*, 926 F.2d 1136, 1142 (Fed.Cir.1991) (noting that "[t]o be deemed acceptable, the alleged acceptable noninfringing substitute must not have a disparately higher price than or possess characteristics significantly different from the patented product"); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed.Cir.1984) (an award of lost profits depended on a factual inquiry by a special master).

The Court does not understand Velodyne to be arguing that its motion depends on application of the *Panduit* factors. If it were, it would be denied as premature. The motion before the Court is decided on the basis of the distinct proposition that the law treats patentees differently from manufacturers/sellers.