**McROSKEY v. BRAUN MATTRESS CO.**

No. 8971.

Circuit Court of Appeals, Ninth Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 8, 1939.

A. W. Boyken and Carroll A. Gordon, both of San Francisco, Cal. (Boyken, Mohler & Gordon, and Mark Mohler, all of San Francisco, Cal., of counsel) for appellant.

Jesse H. Steinhart and John J. Goldberg, both of San Francisco, Cal., and Fred Gerlach, of Chicago, Ill., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This was an action at law by appellant, Edward L. McRoskey, against appellee, Braun Mattress Company, to recover damages for alleged infringement of two patents (Nos. 1,931,202 and 1,977,856) [1] owned by appellant. Appellee was alleged to have infringed both patents by using a machine alleged to have been purchased by it from Droll Patents Corporation, of Chicago, Illinois. Defenses were (1) that the patents are invalid, and (2) that, if valid, they were not infringed. At the close of all the evidence, appellee moved for and obtained a directed verdict in its favor. From the judgment entered on that verdict, this appeal is prosecuted.

The evidence establishes, without conflict, the following facts:

Patent No. 1,977,856 was applied for on May 4, 1931, and was issued on October 23, 1934. The specification states: "My [appellant's] invention relates to improvements in mattress tufting machines. * * * An object of the present invention is to provide a machine which will designate all of the places on the mattress which are to be tufted and which will simultaneously depress the mattress at all of these places."

The specification describes a machine which, it states, is one embodiment of appellant's invention. This machine comprises a pair of frames [2]—an upper frame and a lower frame—between which an untufted mattress may be placed, and means for supporting the frames, for holding them parallel to each other, for rotating them and for moving the upper frame toward and away from the lower frame.

Each frame is provided with a plurality of conical-shaped mattress depressing members. These conical members are connected with each other by cross strips forming part of the frame. Each conical member has an opening in its bottom. The conical members on the upper frame are directly above those on the lower frame. Thus, the openings in the bottoms of the conical members are aligned with each other. As the upper frame moves toward the lower frame, the conical members simultaneously depress the mattress at all the places where the mattress is to be tufted, thus designating these places. The operator, working from the top of the upper frame, passes tufting needles through the openings in the bottoms of the conical members and through the mattress at the places thus designated. After strings have been threaded through the mattress, the frames may be rotated into inverted position, thus permitting the operator to secure tufts to the other ends of the strings.

The art of mattress tufting is very old. In that art, machines were used long prior to appellant's alleged invention. Appellant's contribution, if any, was by way of improvement only. He made no primary or pioneer invention. The machine described in the specification differs but slightly, if at all, from prior art machines. They, too, comprised upper and lower frames, mattress depressing members attached thereto, and means for supporting the frames, for holding them parallel to each

---

[1] The complaint charged infringement of a third patent (No. 1,977,857), but that charge was withdrawn.

[2] Each frame is in two parts or sections, one above the other. The lower part of the lower frame is called a mattress supporting frame. The upper part of the upper frame is called a mattress compressing frame. The upper part of the lower frame and the lower part of the upper frame—the parts next to the mattress—are called mattress depressing frames. Actually, the four parts constitute a single pair of frames.

other, for rotating them and for moving the upper frame toward and away from the lower frame. If the machine described in the specification has any distinguishing feature, it is in providing the frames with mattress depressing members which are conical-shaped and which designate the places where the mattress is to be tufted.

Appellee's machine has no such feature. It has a pair of frames, and each frame is provided with mattress depressing members, but the members are not conical-shaped. Instead, they are trough-like members extending lengthwise of the frame. The "troughs" are open at the bottom. Through these longitudinal openings, and through the mattress held between the frames, tufting needles are passed. Thus, appellee's mattress depressing members may be said to designate the lines upon or along which the mattress is to be tufted, but they do not designate the points or places where it is to be tufted.

Prior art machines had mattress depressing members with openings through which tufting needles were passed, and by which the lines upon or along which the mattress was to be tufted were designated. The mattress depressing members described in the specification designate, not merely the lines, but the points at which the mattress is to be tufted. Since appellee's mattress depressing members are not conical-shaped and do not designate the points at which the mattress is to be tufted, they cannot, in view of the prior art, be regarded as the equivalent of the conical-shaped members described in the specification.

Patent No. 1,977,856 contains 28 claims. The complaint charged that all were infringed. At the trial, however, the charge was withdrawn as to all except claims 1, 2, 3, 9, 10, 11, 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 27 and 28.[3] Claims 1, 2, 3, 9, 10, 11, 12, 15, 20, 21, 23, 25 and 26 are for mattress tufting machines. Claims 16, 17, 18, 22, 27 and 28 are for parts of such machines.[4] In all the claims except claim 28, each machine or part claimed includes a pair of frames.[5] Claim 28 is for a single frame.

In claims 1, 2, and 3, each frame is described as carrying "mattress depressing members * * * having openings aligned with each other * * * said members designating the places where the mattress is to be tufted."

In claims 9 and 10, each pair of frames is described as "a frame adapted to receive a mattress thereon" and "a second like frame carried thereby."

In claims 11 and 12, each pair of frames is described as supporting "two mattress compressing sections adapted to receive a mattress therebetween."

In claim 15, the frames are described as "a pair of mattress compressing sections adapted to receive a mattress therebetween."

In claims 16, 17 and 18, each pair of frames is described as "a member characterized by a plurality of spaced apart apertured inclined compression surfaces," and "a similarly characterized member the apertures of which are permanently aligned with those of the first member."

In claim 20, the frames are described as "a pair of substantially similar pressure exerting members, each of which is characterized by an inner face and an outer face upon the former of which are mattress indenting portions apertured to enable a tufting cord to be passed from the outer face of one member to the outer face of the other member; the mattress indenting portions of the respective members being related to each other for cooperable presentation against respective sides of a mattress to compress the parts thereof to be tufted."

In claim 21, the frames are described as "a pressure-exerting member" and "a second pressure-exerting member cooperable with the first member and movable relatively of said first member."

In claim 22, the frames are described as "upper and lower substantially rectangular, spaced apart members for receiving a mattress therebetween."

In claim 23, the frames are described as "rotatably mounted and relatively reciprocal upper and lower compressing members, each having a plurality of equi-distantly spaced mattress indenting portions; the indenting portions of the respective members confronting each other and having

---

[3] Appellant's brief states: "At the trial [appellant] specified nineteen claims * * * to-wit, Nos. 1, 2, 3, 9, 10, 11, 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 27 and 28 * * * as having been infringed."

[4] In claims 16, 17, 18 and 20, mattress tufting machines are called mattress tufting organizations.

[5] In claim 15, the frames are called sections. In claims 16, 17, 18, 20, 21, 22 and 23, they are called members.

aligned apertures for the passing of tufting devices therethrough."

In claims 25 and 26, each pair of frames is described as "a mattress-supporting frame" and "a co-operable mattress-compressing frame located above the supporting frame."

In claim 27, the frames are described as "a pair of co-operable relatively movable compressing frames between which the mattress can be placed in a position to be compressed for the tufting thereof, the frames having apertured means for indenting the mattress at the places to be tufted."

In claim 28, the frame is described as "A compressor frame for mattress tufting machines comprising a horizontal structure, the upper surface of which is provided with mattress-indenting portions, each having convergent walls with smooth surfaces over which a mattress can slide freely, said portions being spaced apart from each other and the convergent walls of each portion being connected by a wall over which the mattress can also slide freely and upon which the mattress can rest at the places to be tufted, the last mentioned walls being apertured for the passing of a tufting device therethrough."

Claims 1, 2 and 3 are the only claims in which mattress depressing members are mentioned by name. Obviously, however, the "mattress compressing sections" mentioned in claims 11 and 12, the "apertured inclined compression surfaces" mentioned in claims 16, 17 and 18, and the "mattress indenting portions" mentioned in claims 20, 23, and 28 are mattress depressing members. Furthermore, in view of their function, it is certain that all the frames—those described in claims 9, 10, 15, 21, 22, 25, 26 and 27, as well as those described in claims 1, 2, 3, 11, 12, 16, 17, 18, 20, 23 and 28— have mattress depressing members.

Claims 1, 2 and 3 specifically state that the mattress depressing members of the frames there described designate the places where the mattress is to be tufted. Whether the mattress depressing members of the frames described in the other claims perform a similar function, the claims do not state, but, in view of the declared object of the alleged invention, [6] it must be assumed that they do.

Whether the mattress depressing members of the frames described in the claims are conical-shaped or not, the claims do not state, but, since conical-shaped mattress depressing members are the only ones mentioned in the specification, it must be assumed that the mattress depressing members of the frames described in the claims are likewise conical-shaped. For the claims must be read in the light of the specification. Henry v. Los Angeles, 9 Cir., 255 F. 769, 780.

Thus, it is seen, each claim of patent No. 1,977,856 here involved is for a machine or part thereof comprising, inter alia, a frame or frames having conical-shaped mattress depressing members which designate the places where the mattress is to be tufted. Since, in appellee's machine, the mattress depressing members are not conical-shaped, and do not designate the places where the mattress is to be tufted, we conclude that none of the claims was infringed by appellee. Whether the claims are valid or invalid we need not and do not decide.

Patent No. 1,931,202 was applied for on June 24, 1931, and was issued on October 17, 1933. The specification states: "The present invention relates to improvements in methods of tying mattresses." Three of the nine claims of the patent are for machines. The others are for methods. The machine claims read as follows:

"1. A tufting machine comprising mattress-compressing members for designating the places to be tufted throughout the entire mattress, and a removable gauge for determining the length of the looped strand in the mattress."

"3. A machine of the character described comprising a pair of coacting frames having means for simultaneously compressing a mattress at spaced points and means for supporting a tie gauging member relative to each point of compression.

"4. A machine of the character described comprising a pair of coacting frames having means for simultaneously compressing a mattress at spaced points and bars arranged on one of said frames on opposite sides of each point of compression for supporting a tie gauging member thereon."

Appellee's machine has no members for designating the places to be tufted throughout an entire mattress, no means for simul-

---

[6] The specification states that an object of the invention is "to provide a machine which will designate all of the places on the mattress which are to be tufted and which will simultaneously depress the mattress at all of these places."

taneously compressing a mattress at spaced points, no gauge for determining the length of a looped strand in a mattress, no bars or other means for supporting a tie gauging member.

Claims 2, 5, 6, 7, 8 and 9 are for methods in each of which one step is that of "simultaneously compressing a mattress at spaced points." This step was not included in any method practiced by appellee.

We conclude that appellee did not infringe any claim of patent No. 1,931,202. As to the validity or invalidity of the patent or any claim thereof, we express no opinion.

The question of infringement is a question of fact which, in an action at law, must ordinarily be left to the jury. Battin v. Taggert, 17 How. 74, 85, 15 L.Ed. 37; Keyes v. Grant, 118 U.S. 25, 37, 6 S.Ct. 950, 30 L.Ed. 54; Royer v. Schultz Belting Co., 135 U.S. 319, 325, 10 S.Ct. 833, 34 L.Ed. 214; Coupe v. Royer, 155 U.S. 565, 577-580, 15 S.Ct. 199, 39 L.Ed. 263; United States v. Esnault-Pelterie, 299 U.S. 201, 205, 57 S. Ct. 159, 81 L.Ed. 123. But where there is no evidence of infringement, or where, as in this case, the evidence establishes, without conflict, that there was no infringement, it is the duty of the court to direct a verdict for the defendant. Black Diamond Coal Mining Co. v. Excelsior Coal Co., 156 U.S. 611, 618, 15 S.Ct. 482, 39 L.Ed. 553; Singer Mfg. Co. v. Cramer, 192 U.S. 265, 275-286, 24 S.Ct. 291, 48 L.Ed. 437; United States v. Esnault-Pelterie, supra.

Appellant cites, as evidence of infringement, the testimony of his expert witness, George J. Henry, to the effect that some of the claims in suit read upon appellee's machine. This, appellant contends, was sufficient to require submission of the case to the jury. The contention is rejected. Infringement is not proved merely by reading a claim upon an accused device. For infringement is not a mere matter of words. Grant v. Koppl, 9 Cir., 99 F.2d 106, 110. The evidence shows conclusively that, properly construed, the claims in suit were not infringed by appellee. That being so, it is immaterial—if true—that some of the claims read upon appellee's machine.

Appellant complains of the admission in evidence of five patents (Nos. 1,771,822, 1,818,755, 1,883,220, 1,941,794 and 1,949,-148), testimony concerning four of the five patents, and testimony concerning a mattress tufting machine said to have been built in 1929 and rebuilt in 1934. We think all this evidence was admissible but, even if it was not, its admission did not prejudice appellant. For, even if this evidence had been excluded, appellee would still have been entitled to a directed verdict.

Judgment affirmed.