**PERMO, Inc., et al. v. HUDSON–ROSS, Inc., et al.**

No. 9875.

United States Court of Appeals Seventh Circuit.

Jan. 19, 1950.

Clarence J. Loftus, William E. Lucas, Chicago, Ill., for appellant.

Ephraim Banning, III, Chicago, Ill., George I. Haight, Edward A. Haight, Chicago, Ill., John W. Hofeldt, Chicago, Ill., Carl E. Hoppe, San Francisco, Cal., for appellees.

Before MAJOR, Chief Judge, KERNER, and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit for patent infringement. Plaintiff Astatic Corporation is the owner and plaintiff Permo, Inc., the exclusive licensee of Semple Patent 2,325,343 covering a phonograph needle, issued July 27, 1943, on application filed January 28, 1942. Defendant M. A. Miller Manufacturing Co. manufactures the accused needles and defendant Hudson-Ross, Inc., has sold some. Only Claim 1 of the patent is here in issue. The district court held Claim 1 invalid, but infringed if valid.

Claim 1 is broadly stated; it calls for four elements: "A record engaging stylus (needle) for a phonograph reproducing mechanism comprising in combination a rigid shank adapted to be secured to the

mechanism, a flexible member rigidly secured to said shank, a pointed record groove engaging element carried by said flexible member, and (a) foot on the lower end of said shank adapted to engage the record upon flexing of said flexible member." In prosecuting the patent in suit in the Patent Office Claim 1 of the application was rejected as being "fully met" by Hasbrouck 2,280,763. The claim rejected was substantially identical with the preamble and the first three elements of the claim here in issue. The present Claim 1 was Claim 2, as originally filed.

Plaintiffs say that the patent in suit is directed to a phonograph needle per se for the conventional type phonograph which necessarily employed a transducer or pickup secured to a hinged tone arm. Such tone arm was adapted to be raised and lowered vertically with respect to the phonograph record. The transducer or pickup carried by the free or swinging end of the tone arm contained a needle chuck in which needles are readily placed and replaced by turning a thumb screw.

Plaintiffs claim that the old conventional needle was not shockproof and that a careless dropping of the tone arm would damage not only the needle but the phonograph record as well. Plaintiffs say that the problem was to conceive and provide a readily replaceable, self-contained phonograph needle which itself would be shockproof and would automatically return all parts, including the playing point and the tone arm, to normal playing position after dissipation of the excessive vertical pressure. This has been accomplished, so plaintiffs claim, by the needle covered by the patent in suit.

Boiled down to its essentials, the four elements of plaintiffs' needle are (1) a rigid shank, the upper end of which is to be secured in the phonograph pick-up head, (2) a flexible member secured to the shank, (3) a record engaging element carried by the flexible member, and (4) a foot at the lower end of the shank. From the description in the patent we obtain the following information. The shank is flattened on the upper end where the set screw bears against it to hold it in position. The shank

is made of cold rolled steel or other tough material. While the angle between the shank and the vertical depends upon the construction of the stylus holder, it is normally 21.5°. The shank has an annular groove above the base of the foot. The flexible member is made of piano wire and is secured in the groove in the shank. It extends generally parallel above the middle of the foot and is then bent upward to provide a horizontal end portion. The flexible member is stiff enough to transmit the vibrations without appreciable loss in amplitude, yet yieldable enough to permit the foot to touch the record when more than four ounces of pressure are applied to the shank. The record engaging element is preferably a gem or semi-precious stone, such as a sapphire embedded in brass. It is soldered or otherwise secured to the flexible member. The foot is formed by flattening and bending the lower end of the shank. The record engaging element is positioned immediately in front of the foot. A suggested angle between the axis of the shank and the axis of the foot is 43°. The specification suggests the possibility of variations in three of the four elements contained in Claim 1. In view of these possible variations, examples of which are given, Semple specifically advises those in the art, "The above specifically described embodiment of the invention should be considered as illustrative only. * * * Reference should therefore be had to the appended claims in determining the scope of the invention." In spite of Semple's admonition of referring to the claims to determine the scope of the patent, plaintiffs here insist that both the specification and the drawings must be examined and extensively applied in order to limit the broad scope of the claim in issue.

The introductory phrase to Claim 1 is, "A record engaging stylus for a phonograph reproducing mechanism comprising in combination * * *." By referring to the specification and drawings the plaintiffs say that this means a phonograph needle for a conventional type phonograph including the stacked record type. The first element of the claim reads, "A rigid shank adapted to be secured to the mechanism,"

and plaintiffs add, "Whose socket in the pick-up is arranged at a substantial angle from the vertical." The second element reads, "A flexible member rigidly secured to said shank," and plaintiffs supplement, "At a substantial distance above the record engaging portion of the rigid * * * foot, and extending downwardly at a substantial angle." The third element of the claim is, "A pointed record groove engaging element carried by said flexible member," and plaintiffs say this merely means the tip. As to this one element plaintiffs do not refer to the specification, for therein is described, and the drawings disclose, a jewel point embedded in brass. The last element of the claim reads, "(a) foot on the lower end of said shank adapted to engage the record upon flexing of said flexible member," and plaintiffs say that the accused device, which is simply a nylon sleeve or elbow at the lower end of the shank, is covered by the foot described in the claim. Plaintiffs say that Semple's positioning of the foot co-axially with the body member (10) is strategic. A glance at plaintiffs' patent drawing will show that Semple's foot (12) is not co-axial with the shank body. The most obvious feature of the Semple foot or bumper is that it is angularly disposed with reference to the shank.

▮ It is of course well established that a claim of a patent should be read in connection with the disclosure of the specification and drawings. Schriber-Schroth Co. v. Cleveland Trust Co. et al., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132; Highway Appliances Co. v. American Concrete Expansion Joint Co., 7 Cir., 93 F.2d 113, 117. However, the specification and drawings should be considered for the purpose of better understanding the meaning of the claim, and not for the purpose of changing it or making it different from what it is. Howe Machine Co. v. National Needle Co., 134 U.S. 388, 10 S.Ct. 570, 33 L.Ed. 963. Drawings may be referred to in order to explain but not to vary the meaning of a claim. Elgin Co-operative Butter-Tub Co. v. Creamery Pkg. Mfg. Co., 7 Cir., 80 F. 293. The owner of a patent may not distort a claim and use it as a nose of wax.[1]

▮ Claims of a patent may incorporate the specification and drawings by reference, Snow v. Lake Shore and Michigan Southern Ry. Co., 121 U.S. 617, 630, 7 S. Ct. 1343, 30 L.Ed. 1004, and courts will give effect to such a direction by the patentee. Charles Peckat Mfg. Co., et al. v. Jacobs, etc., 7 Cir., 178 F.2d 794; Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 20 L.Ed. 33. But in the latter case, the Court said, 11 Wall. page 547, "Omit the words 'substantially as described' or 'substantially as set forth' and the question presented would be a very different one." Claim 1 of the patent in suit contained no such reference. But plaintiffs insist that the words "substantially as described" must be implied. But here the patentee negatived any such implication, for he specifically stated, "Reference should therefore be had to the appended claims in determining the scope of the invention." Under such circumstances we do not think it permissible to minutely unravel the specification of the patent in suit in a search for some implication that Claim 1 means something different than described in the claim itself.

In the case at bar the plaintiffs are in a difficult situation. On the one hand, by referring to the specification and drawings they ask the court to narrowly limit some

---

1. "Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms. * * *" White v. Dunbar, 119 U.S. 47, 51–52, 7 S.Ct. 72, 74, 30 L.Ed. 303.

of the elements of Claim 1 in view of the prior art, but on the other hand they seek a broad scope for said claim in order that it will read upon the accused device.

But, even assuming extensive incorporation of the specification, as plaintiffs suggest, it is to be noted that examples of modifications were therein given as to each element *except the foot*. In describing the specific angle of the foot, the specification mentions that the angle "may be varied," but it is neither suggested nor implied that the angle may be eliminated. Plaintiffs here seek to read the claim language without mentioning the angularity of the foot which distinguishes Semple from the accused structure. Plaintiffs' expert testified that each of the prior art structures relied upon by defendants has "a shank" as described in Claim 1, "a flexible member rigidly secured to said shank," and "a pointed record groove engaging element carried by said flexible member." He also found in each disclosure "means adapted to engage the record upon the flexing of said flexible member." There is only left the specific guard means employed.

Contending invalidity, defendants cite five patents as pertinent prior art, to wit: Dally Patent No. 2,320,416, Hasbrouck Patent No. 2,280,763, Hasbrouck Patent No. 2,326,460, Thompson Patent No. 2,359,-808, and Thompson Patent No. 2,399,585. Plaintiffs answer that the application for each of said patents was co-pending in the Patent Office with that of the patent in suit, and that although each of said applications was filed earlier than the application for the patent in suit, nevertheless such applications were then secret and thus cannot be considered as part of the prior art.

In support of their contention that such patents are part of the prior art, defendants cite several cases including W. F. and John Barnes Co. v. International Harvester Co., D. C., 51 F.Supp. 254, 263-266. The court there stated, 51 F.Supp. page 265: "The court is of the opinion that the statutes of the United States declare a public policy, which has been recognized by the Supreme Court in the Milburn case (Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324,

70 L.Ed. 651), and by the Circuit Court of Appeals of this circuit in its recent decisions, and which requires that the disclosures of the earlier filed application may be supplemented by reference to the general state of the art in the manner customary in construing other prior art patents, and which requires that the doctrine of equivalents may be applied in considering the effect of the earlier filed but co-pending applications upon the later filed application."

■ But it is not necessary for us here to determine whether the co-pending applications of the patents hereinbefore described should be considered as prior art in the technical sense, for it is a widely recognized rule that even though such co-pending application which ripens into a patent may not be a part of the prior art in its usual sense, the application for such patent can nevertheless be used to prove that the patentee of the patent in suit was not the original and first inventor or discoverer of any material or substantial part of the thing patented. Osteen v. Ansco Photoproducts, Inc., 2 Cir., 27 F.2d 688, 689; Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 27 F.2d 823, 830; Electrol, Inc. of Missouri v. Merrell & Co., 8 Cir., 39 F.2d 873, 877; Fessenden v. Wilson, 48 F.2d 422, 423, 424, 18 C.C.P.A., Patents, 1171; Benedict v. Menninger, 64 F.2d 1001, 1003, 20 C.C.P.A., Patents, 1138; Stelos Co., Inc., v. Hosiery Motor-Mend Corp., 2 Cir., 72 F.2d 405. In Gasifier Mfg. Co. v. General Motors Corp., 8 Cir., 138 F.2d 197, 200, it was held that the application for a patent filed earlier but issued subsequent to the filing date of the patent in suit was competent defense material to show that the patentee of the patent in suit was not the first inventor.

■ The District Court found that Semple was not the original or first inventor or first discoverer of any material or substantial part of the thing patented in Claim 1 in view of the Thompson application filed September 18, 1940, which matured into Patent No. 2,359,808 granted on October 10, 1944, and Patent No. 2,399,585 granted on April 30, 1946. This finding must be sustained. Thompson sought to protect the

needle and the record, and did so by offsetting the groove engaging portion of the stylus from the shank or armature and by means of a guard which he attached to the frame of the device. Semple sought to give such protection by means of the foot.

 The District Court found that Semple was not the original or first inventor or first discoverer of any material or substantial part of the thing patented in Claim 1 in view of the Hasbrouck applications filed March 30, 1940, and September 10, 1940, which matured, respectively into Patent No. 2,280,763 granted April 25, 1942, and Patent No. 2,326,460 granted August 10, 1943. This finding must also be sustained. The lower end of the shank on the two Hasbrouck patents extends down below the flexible members. Although not designated as a foot, tests demonstrated that the end of the needle shank did operate to protect both the needle and the record.

The District Court found that Semple was not the original or first inventor or the first discoverer of any material or substantial part of Claim 1 in view of the Dally application filed June 21, 1941, which matured into Patent No. 2,320,416 granted June 4, 1943. Again we think this finding must be sustained. Dally has all of the elements recited in Claim 1 of the patent in suit. While Dally's bumper extends away from rather than toward the needle point, Claim 1 of Semple is not so limited.

In the final analysis, plaintiffs' position must be that Semple's contribution was that he moved the guard means or bumper from the pick-up head to the needle shank. We think that there was no invention in anything so obvious. It was nothing more than a mechanic's choice. What Semple did, if anything, was to improve the bumper, but the claim here in issue is for a combination in a phonograph needle.

But plaintiffs also insist that only the needle covered by the patent in suit is a shockproof needle. The proofs do not bear out such assertion. In a courtroom test a Semple needle dropped twice from a height of four inches was entirely destroyed, whereas a needle constructed under Dally subjected to an identical test came out in much better condition.

The district court decided this case on the ground of invalidity of Claim 1. However, the Judge stated that if Claim 1 were to be held valid, he was of the opinion that the accused device would infringe. Whether there was infringement depends on whether Claim 1 is to be given a broad scope. The accused structure has no foot like that of Semple, which is formed by a flattening and bending of the lower end of the shank, and extends at an angle from the shank, and has a record engaging element positioned immediately in front of the foot. The dilemma faced by the plaintiffs is again apparent. They desire a narrow limitation of Claim 1 when validity is being considered, and a broad scope so as to read on the accused device.

We think the judgment below should be affirmed on the basis that Semple was not the original or first inventor or first discoverer of any material or substantial part of the thing patented in Claim 1. It is so ordered.