**REYNOLDS–SOUTHWESTERN CORPORATION, Appellant,**

v.

**DRESSER INDUSTRIES, INC., Appellee.**

**No. 23337.**

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1967.

Rehearing Denied April 12, 1967.

Walter C. Clemons, Houston, Tex., for appellant.

Robert A. White, Houston, Tex., Robert W. Mayer, Dallas, Tex., Alvin M. Owsley, Jr., Ian A. Calvert, Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel, for appellee.

Before WISDOM, COLEMAN, and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge:

This record presents a perplexing case of alleged patent infringement. It points up the frustration to be found in the growing practice of requesting jury trials in patent infringement cases instead of proceeding as in equity. The situation was not improved by the defendant's motion for a directed verdict at the close of the plaintiff's proof. The District Judge was of the view that the cause of action was altogether without merit and granted the motion. The plaintiff has appealed. Upon a tedious, painstaking review we find it necessary to reverse and remand for a new trial.

I

The motion for a directed verdict was followed by a rather unusual colloquy:

"The Court [addressing counsel for Defendant]. You are saying there is no proof of infringement?

Counsel. Yes, your Honor, he has absolutely failed to make out a case of infringement. In essence, that is my motion.

The Court [addressing counsel for Plaintiff]. What have you to say to that?

Counsel. Sir, we certainly want the jury to rule on the question of infringement.

The Court. I am sure you do, but tell me what evidence you have to show infringement.

Counsel. The evidence that we have presented, your Honor. We think there is a question of fact that ought to go to the jury in this case.

The Court. On each of the four claims.

Counsel. Yes, sir. Claims 13, 14, 18, and 20, with respect to the alleged infringing devices that have been shown.

The Court. Do you care to point out to me any more particularly, or do you just want to stand on your general statement?

Counsel. No, we will stand on our general statement, your Honor, that we certainly want the jury to rule on infringement, because we will have wasted our time here in the event we just invalidate the patent, without sending any issues at all to the jury. I think we certainly have an issue of obviousness, here, for example, that ought to go to the jury, with respect to invention.

The Court. Do we reach the issue of validity of the patent at this time?

Counsel. Subject to our exceptions, yes, sir.

The Court [addressing counsel for Defendant]. What is your thought about that?

Counsel. No, your Honor, it is my thought we do not reach the issue of validity."

After taking 300 printed pages of testimony, counsel for the plaintiff was twice urged, and twice declined, to state wherein the evidence actually proved an infringement. Nor did counsel for the defendant, although the movant, come forward with any elaboration on the subject. Our amazement is somewhat accentuated when we observe counsel for the defense saying in support of his motion that the validity of the accusing patent was not involved, although he had expressly pleaded invalidity as a defense. Moreover, he did not call the attention of the Court to the principle announced by the Supreme Court [1] in these cases that there should be full inquiry into the validity of the patent involved rather than disposing of suits on the ground of non-infringement alone.

II

The Patent alleged to have been infringed, No. 2,825,885, (hereinafter referred to as 885) was applied for on June 14, 1954 and issued on March 4, 1958. The accused Patent, No. 3,023,403, was applied for on May 10, 1957 and issued on February 27, 1962. The first claimed infringement is said to have been discovered in the summer of 1962, after which suit was promptly filed.

The complaint charged infringement in general terms only. It contained no specific allegation as to which of the claims of Patent 885 had been infringed or as to how infringement was committed. The first 148 pages of the printed record are consumed by numerous motions, counter-motions, memorandums and counter-memorandums, but we find no motion for a more definite statement under Civil Rule 12. We gather from the briefs that by common consent the case was tried on the theory that Claims 13, 14, 18, and 20 of Patent 885 were the ones in issue.

The Patent 885 pertains to seismic surveying for the discovery of oil and gas, now the prevalent method for such exploration. In a seismic survey, it is conventional to set up earth tremors or waves by setting off an explosion at or near the surface of the earth. These tremors or waves radiate down into the earth in all directions. If the waves radiating down into the earth come into areas where the density of the earth changes, some of the waves will be reflected toward the surface similarly to the reflection of a beam of light by a mirror. Certain electrical instruments, known as detectors or geophones, can be spaced on the surface at measured distances from the point of explosion so as to pick up the reflected waves or earth tremors. Since the angle of these waves can be figured from the distance between the explosion point and each of the geophones, and the reflection time computed, a trained geophysicist can, by using a mathematical formula, chart the existence of the strata below the surface and thus determine the existence of an under-

1. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1944).

ground structure that might contain oil or gas. Obviously, since the time element involved in the reflections received by the various geophones must necessarily vary according to the distance travelled, then corrections for "moveout" must be made before the geophysicist can properly chart the results received. Originally, the necessary corrections and chartings had to be done manually. This, of course, took much time, in addition to being very tedious.

Mr. Vining T. Reynolds, the inventor of the device patented in 885, conceived the idea of making a machine that would eliminate the necessity for manual corrections and chartings. At the trial he described his machine as follows:

"A copy of seismic record; that when you pushed the button and started the electric motor, it scanned this record and took all the weather and elevation corrections out of the data; it took out the move-out, and it converted them into depth, in one operation, on a piece of photographic paper. What it ordinarily took a man four hours to do with one record in the old fashioned manner, over a pencil and an adding machine, my machine could accomplish in the order of one minute".

If claimed infringement is to be sustained it is axiomatic that the accusing patent must be valid. Its character is fixed by the claims upon which it was granted. An infringing device must perform substantially the same function or accomplish a substantially identical result by substantially identical means and the principle or mode of operation must be the same. A machine or device which performs the same function or accomplishes the same result by substantially different means or by a substantially different principle or mode of operation or in a substantially different way does not infringe the patented invention. 69 C.J.S. Patents § 292.

Validity and infringement are ultimate facts. In actions at law they are to be decided by the jury. If the evidence is not sufficient to establish validity and infringement, it is the duty of the trial court to direct a verdict for the defendant. That is the law as announced by the Supreme Court in United States v. Esnault-Pelterie, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123 (1936).

From the dialogue quoted at the beginning of this opinion, it is clear that counsel for the defendant, pressing his motion for a directed verdict, in effect conceded the validity of the accusing patent. So far as the directed verdict was concerned only the question of infringement remained in the case.

In an action at law for infringement, it is the duty of the trial court to grant a verdict for the defendant if there is no evidence of infringement or if the evidence establishes without conflict that there was no infringement. McRoskey v. Braun Mattress Co., 9 Cir., 1939, 107 F.2d 143, citing, inter alia, United States v. Esnault-Pelterie, supra.

In the *McRoskey* case there was a directed verdict for the defendant. The Court said:

"Appellant cites, as evidence of infringement, the testimony of his expert witness, George J. Henry, to the effect that some of the claims in suit read upon appellee's machine. This, appellant contends, was sufficient to require submission of the case to the jury. The contention is rejected. Infringement is not proved merely by reading a claim upon an accused device. For infringement is not a mere matter of words. Grant v. Koppl, 9 Cir., 99 F.2d 106, 110. The evidence shows conclusively that, properly construed, the claims in suit were not infringed by appellee. That being so, it is immaterial—if true—that some of the claims read upon appellee's machine".

In view of these standards, did the plaintiff adduce proof of infringement sufficient to have required submission of the issue to the jury? In the resolution of this question we are reminded of what the Supreme Court said in *Esnault-Pelterie,* supra, "The contentions of the parties—briefly above indicated—raise complicated and difficult questions affecting

**596**

validity and infringement". The Court concluded by remanding that case *for further findings*. This being a jury case we cannot take that course. If we could, we would give it serious consideration in the hope that upon remand plaintiff would see fit to waive a jury and agree to reference to a master, skilled and experienced in the field.

Mr. Reynolds, the inventor in 885, was the first witness for plaintiff. His testimony in chief did not touch upon infringement until the very close, and this is what it consisted of:

"Q. Mr. Reynolds, when did you first find out that S.I.E., or Dresser, was building a device which you thought came within the scope of your patent?

A. The first time that I actually had the opportunity to examine a machine that I thought was within the scope of my patent was in the summer of 1962.

Q. Where?

A. At Independent Exploration Company.

Q. Did you believe at that time that the machine you saw infringed your patent?

A. I did.

Counsel. No further questions, your honor."

Obviously, this testimony did not establish infringement and raised no facts requiring a submission to the jury. Counsel for defendant, however, was not satisfied with this and proceeded to conduct a cross examination which ran on for seventy-seven printed pages, during which he elicited much more than plaintiff's counsel did. On cross examination, Mr. Reynolds testified that the offending machine "had a move-out mechanism that apparently had been, may I say, copied in essence * * *". He further elaborated to the effect that the accused machine had every one of the following features contained in Claim 20 of his patent, "support for a master seismic record. A bank of scanning devices. We have means co-operating with the scanners for reproducing recorded signals being scanned instantaneously. We have

a mechanism importing relative travel between said bank of scanning devices and the record support for progressively scanning the recorded signals and variable speed power transmission means directly responsive to such relative travel imparted by said mechanism and transmitting the same at variable rates to said devices for shifting them differentially to one another in accord with a predetermined pattern related to detector spacing and elapsed time between signal arrivals from the same horizons".

The witness, David M. Best, whose qualifications are disparaged by appellee, but whose credibility would have been for the determination of the jury, testified as follows:

"Q. Have you studied the alleged infringing structure of the Dresser people in this lawsuit?

A. Yes, sir.

Q. Do you find each element of the Reynolds patent claims in these alleged infringing devices?

A. Yes, sir.

Q. That's claims 13, 14, 18 and 20 of the Reynolds patent?

A. Yes, sir.

Q. Do you find every element set forth in Reynolds patent claim 13 in Plaintiff's Exhibit 10, which is a representation of the Dresser MS device?

A. Yes, sir, I find every element.

Q. Would you please point out where these elements are found with respect to Exhibit 13 and Exhibit 10?

A. If I might step down—[Then follows minute description of the basis for his conclusions that the accused device contained every element of Claim 13 and accomplished the same results].

Q. Mr. Best, have you studied claim 20 of the Reynolds 885 patent?

A. Yes, I have.

Q. Do you find each element of Claim 20 in the alleged infringing device that is identified as Plaintiff's Exhibit Number 10?

A. Yes, sir, I do.

Q. I wonder if you would point out each element for us, please.

A. [Then follows a detailed discussion of Best's opinion of alleged infringement of Claim 20].

Q. Mr. Best, have you studied Claim 14 of the Reynolds patent?

A. Yes, sir, I have.

Q. Do you find each element of Claim 14 present in the device of the defendant in this case shown on Plaintiff's Exhibit Number 10?

A. Yes, sir, I do.

Q. I wonder if you would point out how these elements of Claim 14 are present in the alleged infringing device. [Then follows detailed explanation by witness Best of the basis for his conclusions that the accused device contained all the elements of the Reynolds claim and accomplished the same results.]

Q. Mr. Best have you read and studied Claim 18 of Reynolds 885 patent with respect to the MS geodata system shown in Plaintiff's Exhibit Number 10?

A. Yes, I have.

Q. Do you see each element set forth in Claim 18 in the device shown on Plaintiff's Exhibit Number 10?

A. Yes, sir, I do.

Q. I wonder if you would point out these elements for me, please.

A. —[Then follows the detailed explanation of the witness as to his basis for his conclusions of infringement.]"

The witness was asked the identical questions about Claims 13, 14, 18 and 20 in connection with Plaintiff's Exhibit No. 11 and he testified that he found every element in each of said claims on drawings on Plaintiff's Exhibit No. 11 and that the mechanism shown thereon accomplished the same results as Reynolds.

The witness Geery, Vice President of Appellee, called by appellant, under the adverse party rule, testified:

"Q. Mr. Geery, does this diagram of the Erath patent Number 403 disclose any function that isn't disclosed in the Reynolds 885 patent?

A. I am not sure what all is disclosed in the Reynolds 885 patent; " whereupon the witness was handed the Reynolds patent and read aloud:

"A. 'From the above description, it will be seen that a seismograph record can be placed in the machine and quickly and easily reproduced in a form which can be directly read without the long, drawn-out and tedious calculations as heretofore have been necessary. The length of the final reproduction will be proportional to test penetration depth. It carries proper depth and time markings, and the amplitude and frequency trace indications are presented with compensation for lag of reception resulting from spaced geophone location for an easier detection of inclination, thickness and density of succeeding strata formation, and in particular of significant underground irregularities.'

Q. Do you understand that, Mr. Geery?

A. Yes, in general.

Q. Does this machine do everything that you just read? And by this machine, I mean Defendant's Exhibit 4.

A. No, it does not.

Q. What does it not do that you have just read?

A. It does not carry depth markings."

This testimony may have been altogether in error but that was for the jury to determine.

Defendant-appellee in a most ably prepared and presented brief argues that "there is no manner in which the claims asserted in this action could be construed to avoid the prior art and cover the accused device". We have carefully considered this brief, noting that it deals almost exclusively with appellant's version of the prior art rather than a demonstration of pertinent substantial differences between its machine and that part of appellant's machine covered by the claims.

In any event, we are confronted with the following language of the Supreme Court in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605,

609, 70 S.Ct. 854, 857, 94 L.Ed. 1097 (1950):

"A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience".

In this case, the jury had been empanelled to find the facts. We concede that the problem presented was deep water for a jury of laymen to wade. It was brought as a jury action, however, and the evidence outlined was sufficient to pose issues of fact for jury determination.

In the *Esnault-Pelterie* case, supra, in which there were findings of an inadequate nature, the Supreme Court said:

"The failure of the lower court to make specific findings upon the main issues does not lay upon this court the duty of examining, analyzing and comparing the circumstantial facts found to ascertain whether as a matter of law they establish validity and infringement."

There were other issues raised in the appeal and argued in the briefs. These have not been ignored. Since they are not relevant to the decision reached they are not discussed. The parties are, of course, free to raise them anew, if appropriately done, on the new trial.

The Judgment of the Court below will be reversed, and remanded for a new trial.

Reversed and remanded.