**STERNER LIGHTING, INC., et al.,**
**Plaintiffs-Appellees,**

v.

**ALLIED ELECTRICAL SUPPLY, INC.,**
**et al., Defendant-Appellants.**

No. 28599.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1970.

Rehearing Denied Sept. 21, 1970.

John R. Brown, Chief Judge, concurred in part and dissented in part and filed opinion.

Harry Sommers, Howard N. Sommers, Sommers & Sommers, Montclair, N. J., Kärl Vance Hart, Shutts & Bowen, Miami, Fla., for defendants-appellants.

Aubrey V. Kendall, Miami, Fla., for appellees.

Before JOHN R. BROWN, Chief Judge, GEWIN and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

The subject of this patent-infringement suit is lamp-post bases. The trial court held appellees' patent on their lamp-post base valid and found appellants liable for infringement. On this appeal, we agree with the trial court that the patent was valid, but we find the judgment of infringement to be based upon an overly generous reading of the claims, and accordingly we reverse and render judgment for appellants.

Both companies have been in the lamp-post base business for a number of years. Before either the patent at suit issued or the allegedly infringing device was marketed, Pfaff & Kendall, manufacturer of the accused device for appellant Allied, manufactured a device called the "Calso base." Although it never achieved a high degree of commercial success, the Calso base embodied a number of advantageous ideas, some of which were old and some new. The essential feature of the base was a hinge attached to its bottom that allowed the entire pole to swing down to the ground for easy installation and maintenance of lamps (see Figure 1). The base itself was a hollow pedestal, terminating at its upper end in a pole. It had a removable plate that allowed access to the transformer and wiring inside. The Calso base was used mainly in the middle and late 1950's, but its bulk and lack of strength caused it to have disadvantageous properties that in turn induced Allied to discontinue merchandising it.

The patented base, which Allied is accused of infringing, is manufactured by Sterner Lighting, Inc., one of the appellees. Sterner filed its application in 1960 and began at that time to merchandise its base, which proved highly successful commercially. This base is stronger and smaller than the Calso device, partly because the electrical components that must go into it had been more carefully developed by 1960 and were themselves smaller. The base is a flat plate attached to the bottom of the pole, hinged at one edge, with a short border hanging down and supported on the edge opposite the hinge by two knobs coming out of the foundation (see Figure 2). The device can be easily operated by one or two men. Its sales rose from approximately $1,000 in 1960 to nearly $2,-000,000 in 1967.

About 1964 Pfaff & Kendall and its customers began to feel pressure from the success of the Sterner device. Builders and architects engaged in area lighting projects had begun to specify the Sterner base to an extent that it was cutting into Allied's customers' markets. One of Pfaff & Kendall's sales managers requested that Pfaff & Kendall's engineering department construct a base that would have the advantageous characteristics of the Sterner device. Engineering replied with the suggestion that Pfaff & Kendall use the old Calso base, to which a Pfaff & Kendall marketing manager replied, "This base is a killer. It can get away. That is one reason it is no longer used." Thus there can be no question that it was in response to competition from the Sterner device that Pfaff & Kendall developed the base (sold by it to Allied) that is here accused of infringing the Sterner patent (see Figure 3). Pfaff & Kendall was clearly trying to reproduce the ad-

vantageous features of that device. The Allied base shares common characteristics with the Sterner base: It is short and low to the ground, it necessitates placement of the electrical essentials in the pole, and it consists, in part, of a flat plate at the bottom of the pole horizontal to the ground and attached to the hinge. Like the Sterner base, it is light, strong, and easy to operate.

The question of validity of the patent is the first one we must consider, because of the deep public interest in the existence of patent monopolies. *See* Beckman Instruments, Inc. v. Chemtronics, Inc., 5th Cir. 1970, 428 F.2d 555. Allied argues that it is invalid both because it is obvious and because it is anticipated by the prior art. After consideration of this question, we take up the second issue in the case, which is whether the Allied device infringes the claims of the patent when those claims are properly construed.

## I. VALIDITY OF THE PATENT AND CONSTRUCTION OF ITS CLAIMS

### A. *Anticipation*

Appellant Allied first argues that the patent is invalid because it was anticipated by the Calso device. The Calso base and the patented invention of course have some characteristics in common, most notably the hinge, but there are also major elements that make the patented device a different invention from Calso. These differences are the essence of the patent. Sterner's licensor, in describing the patent in the trial court, pointed out the following differences between it and the prior art: (1) The base plate is flat and attached to the bottom of the pole and bolts around its edges are used to keep it down. (2) The ballast (that is, the weighting material, which also happens to be the electrical equipment) is in the pole itself rather than in the base. (3) Ventilation space is provided at the bottom. (4) The sides of the base are covered by a skirt attached to the base plate (5) "Bosses," or knobs, from below, hold up the edge of the base plate that is not supported by the hinge.

In order to show anticipation, Allied's witnesses attempted to show that the Calso device embodied equivalents of all these characteristics. For example, testimony equated the sides of the Calso pyramidal base with the pole on the patented device, in order to show that the ballast in Calso was also in the pole. The trouble with this approach is that the Calso pedestal base is different from a pole in structure: It is bigger, heavier, and not as strong. Similarly, the testimony equated the sides of the Calso pedestal, several feet high, with the skirt surrounding the patented device, which is only a few inches high. These elements serve the same functions in the two devices, but again they are structurally different. The jury found against Allied on the issue of anticipation.

■■ Anticipation is largely a question of fact. *See* Graham v. John Deere Co., 1965, 383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545; Swofford v. B & W Inc., 5th Cir. 1968, 395 F.2d 362; American Fidelity & Cas. Co. v. Drexler, 5th Cir. 1955, 220 F.2d 930, 932–933. There are cases in which anticipation depends so heavily upon issues of law that it may be reviewed directly by an appellate court, but this is not such a case. *Cf.* Beckman Instruments, Inc. v. Chemtronics, Inc., *supra.* A jury verdict on the factual issue of anticipation will not be overturned unless fair-minded men could not disagree as to a contrary result. We hold that the jury's finding that the patent was not anticipated by the Calso device is not reversible on this appeal.

### B. *Obviousness*

■ Allied also urges that the patent is invalid because the innovations that make it what it is would be obvious to a person possessing ordinary skill in the art. Obviousness is a difficult, elusive standard to apply. The Supreme Court has recently dealt with the concept in several opinions. In one such case, United States v. Adams, 1965, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, the Court considered a patent on a special kind of bat-

tery. The patent specifically described the components and their relation to each other. The components were all known, but the combination was a specific solution to technical problems that required the exercise of some skill because the components had to be chosen so that they worked together. The Court therefore held the patent valid. By contrast, in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 1969, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258, the Court held a patent on a device to lay asphalt pavement invalid. The device was the first successful machine of its kind. But it was merely a combination of known elements that produced no synergistic result, to which the patentee had contributed no novel arrangement. His patent was invalid because it required him to do nothing but adopt known components, and it was not saved by the fact that no one had ever so used them before. *See also* Graham v. John Deere Co., *supra*; *cf*. Beckman Instruments, Inc. v. Chemtronics, Inc., *supra*. Our question on this appeal is whether the Sterner patent is closer to the *Adams* or to the *Anderson's-Black Rock* situation, and it appears from the decisions that the key to this question is whether the patentee has solved non-trivial technical problems by purposefully manipulating variables so as to elicit a synergistic result from his materials.

Allied, the accused infringer, has advanced an appealing argument that the patent is actually obvious. It contends that since the main problem exhibited by the known-art devices was their bulkiness and weight, the solution Sterner came up with—namely, making the base smaller— is obvious. Also, they point out that putting the electrical components in the pole rather than in the base does not solve a very sophisticated technical problem, especially since the electrical components are in the same place they would be in the Calso prior-art base if that base were shaped as the Sterner base is. There is a good deal of force to this argument, and if recognizing these characteristics

were all there was to construing the patent, it would not be valid.

In applying the substantive standards of patentability to the invention in this case, however, we must follow established principles of patent construction. A presumption of validity attaches to patents that have survived the scrutiny of the Patent Office, and therefore the courts must construe those claims narrowly so as to avoid anticipation and obviousness if that is at all possible. 35 U.S.C. § 282 (1954); Helms Prod. v. Lake Shore Mfg. Co., 7th Cir. 1955, 227 F.2d 677, 680; Williams Mfg. Co. v. United Shoe Mach. Corp., 6th Cir. 1941, 121 F.2d 273, aff'd 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. And it is to be emphasized that it is the claims of the patent, and not any particular device manufactured by the patentee, to which we must look. Beckman Instruments, Inc. v. Chemtronics, *supra*; Hensley Equip. Co. v. Esco Corp., 5th Cir. 1967, 383 F.2d 252. Those claims must adequately and specifically describe a patentable invention. Thus it happens as a practical matter that patents claiming narrow, specific inventions are more likely to withstand attack on anticipation or obviousness grounds than patents that make broad, general claims, however humble or exalted the actual product of the inventor's mind may have been.

As a consequence of these principles, we are able to hold that the patent in suit, which is not broad and general but is a highly specific solution to a particular set of problems, is not invalid for obviousness. It may be true that the relevant art is not highly sophisticated. The invention itself is not very sweeping or impressive. It may likewise be true that the main problem involved, which is that prior bases were too big, is not difficult to apprehend. And we may agree that if Sterner had simply written a patent that claimed any and all bases that solved this problem by making the base smaller, that patent would be invalid for obviousness. The relevant fact, however, is that the patentee has specified the solu-

tion in detail rather than merely stating that the base should be made smaller. In doing so, he was required along the way to solve some technical problems whose solution would probably not be obvious to a person of ordinary skill in the art. For example, the base plate is a flat plane and the pole intersects it perpendicularly at the point of joinder. The Calso base has no such plate; the sides of its pyramidal pedestal join the pole at an angle. The flat planar base apparently makes for a lower profile, less weight, less bulk, and greater strength. We cannot say that this is an obvious way to make a successful base. Also, rather than being connected to the ground on all four sides, the patent has supporting knobs on the side opposite the hinged edge, and a skirt hangs down over the opening between the flat plate and the foundation. This design preserves strength and simplicity without bulk, and we are told by the patentee, with the approval of the Patent Office behind him, that it also allows easy access to the electrical components and provides space for ventilation. All components of the base are coordinated with all other elements to produce these synergistic results. The essential characteristic of the patent is that all elements are specifically described, and coverage can be narrowly confined to the device the patentee actually invented. The patent therefore describes a unique, nonobvious solution to a problem rather than a general idea, which might well be nonpatentable on obviousness grounds.

Of course, a necessary concomitant of the construction we have followed in order to hold the patent valid is that the claims do not cover any invention other than the narrow one they specifically describe. The patent cannot cover all small lamp-post bases, or all lamp-post bases that locate the electrical components in the pole, or all lamp-post bases that avoid the disadvantages of the Calso base. It covers only those bases that solve the relevant problems in the way it describes, containing all elements it describes, arranged in the way it describes.

Thus the construction we have been required to place upon the patent intimately affects the issue of infringement. Since we have thus disposed of the issue of validity, we now pass on to consider whether the patent is infringed.

## II.   INFRINGEMENT

Whether a patent is infringed is primarily a question of fact. National Athletic Supply Corp. v. Tone-O-Matic Prod., Inc., 5th Cir. 1970, 421 F.2d 407; Noe v. Smith, 5th Cir. 1962, 300 F.2d 430; United States Industries, Inc. v. Otis Engineering Corp., 5th Cir. 1958, 254 F.2d 198. Appellate courts are extremely reluctant to overturn jury findings on the issue of infringement, and will do so only if those findings contain a clear error of law or fact. But there are rare cases in which an appellate court may consider infringement directly. One such case is that in which the construction of the patent, itself a question of law, is the main determinant. In a situation "requiring appropriate application of standards of law to facts largely undisputed, * * * [there is] no necessity for remand" even where a court reverses an issue usually regarded as one of fact. National Filters, Inc. v. Research Prod. Corp., 5th Cir. 1967, 384 F.2d 516, 518; see also Reynolds-Southwestern Corp. v. Dresser Industries, Inc., 5th Cir. 1967, 372 F.2d 592, 595. In this case, we find that the construction we have been required to place upon the patent enables us to decide the issue of infringement as one of law.

As we have stated, there can be no question that the allegedly infringing device was developed in response to the success of the Sterner patented base. This may be some evidence of the validity of the patent, but it is not particularly strong evidence even as to that, and it has no relevance to the question of infringement. Indeed, evidence that an alleged infringer produced his device in response to the success of a patented invention may well be misleading, since every person has the right to compete with the pro-

ducer of a patented device if only he obtains his results by means different from those of the patented object. This kind of competition, in fact, is especially to be encouraged, since a patent confers a limited monopoly and allows its holder to exact what is in effect a tax upon the public. Accordingly, the more reliable guide is inspection of the patent and the accused device themselves.

A device infringes a patent if it exhibits substantial identity with the patented device as to means, operation and result. McCutchen v. Singer Co., 5th Cir. 1967, 386 F.2d 82; Foster Cathead Co. v. Hasha, 5th Cir. 1967, 382 F.2d 761. A combination patent is not infringed unless the accused device is substantially identical to the patent in all the elements that are essential to the combination. Reed v. Parrack, 5th Cir. 1960, 276 F.2d 784, 788. It is quite clear that this identity is not present here, given the narrow construction we must apply to the patent. Results obtained by the two devices may be similar since both are hinged lamp bases with low profile, light weight, and easy access to the interior; and operation is similar also. But the bases are structurally different enough that the coordination of elements in the synergistic design clearly presented different problems that had to be solved by its designers. Thus different means are employed by the two bases.

We may point out some of the differences by describing them briefly. Instead of the skirt hanging down from the flat upper plate to cover the sides of the base, the accused device has merely a flat plate, and the sides are covered by a bowl-like lower section that comes up from the foundation. The bowl-like sides of the lower section serve the function of the knobs that protrude from the foundation of the Sterner device and keep the flat upper plate horizontal. As a result, the weight of the base is different, as are its ventilation characteristics. The accused device employs a different means of joining the base to the pole, with an angular collar above the flat plate surrounding the pole, and it is to this collar that the hinge is attached. Making this structure exhibit the characteristics that the Sterner device exhibited—strength, light weight, ventilation, room for all electrical components, attractiveness—posed different structural problems from those posed by the patented Sterner device itself. It may be that they are not highly difficult or sophisticated problems, but if that is so neither were the problems behind the Sterner base once one apprehended the general idea that the base could be made smaller. The differences, furthermore, are significant. They are of the same character as those used by Sterner to distinguish the prior art. A patent may not, like a "nose of wax," be twisted one way to avoid anticipation and another to find infringement. White v. Dunbar, 1886, 119 U.S. 47, 51, 7 S.Ct. 72, 74, 30 L.Ed. 303; Permo Inc. v. Hudson-Ross, Inc., 7th Cir. 1950, 179 F.2d 386. As a consequence of the required narrowness of the claims, we find as a matter of law that the accused device is not substantially identical to the patent.

This construction of the patent so as to confine it narrowly to the precise device it describes doubtless renders it of substantially less value than a broader patent could have. Usually a patent will not be so strictly construed that it is held to the strict device described by the claims or shown through the drawing. See Edward Valves, Inc. v. Cameron Iron Works, Inc., 5th Cir. 1961, 286 F.2d 933; Abbott v. Barrentine Mfg. Co., N.D.Miss.1966, 255 F.Supp. 890. In this case, however, it is the narrowness of the invention that requires the narrow construction. The patent is a limited one in a crowded art. The patentee cannot expect a roving commission to run off all effective competition and tax the public for all uses of a broad idea merely because he has devised a limited invention employing that idea.

Reversed.

APPENDIX

[A2458]

Figure 1
Prior Art:  The "Calso Base"

July 21, 1964

K. F. GUGGEMOS

3,141,620

LIGHTING DEVICE

Filed May 5, 1960

4 Sheets—Sheet 2

FIG. 2

FIG. 3

Figure 2
The Patented Sterner Base

[A2459]

Figure 3
The Allegedly Infringing Base
Manufactured by Pfaff & Kendall for Allied

[A2991]

JOHN R. BROWN, Chief Judge (concurring in part and dissenting in part):

I concur fully in the opinion and decision that there is no infringement. I respectfully dissent as to validity. I see no invention on any standard. The problem was a light pole which could be "collapsed" for maintenance. This called for a hinged base and the electrical circuitry to be readily available when the pole was lowered from the vertical. All Sterner did was take advantage of technological advances in the lighter materials for base and pole and, more important, in electronic circuitry which enabled all to be enclosed within the radius of the pole itself at the bottom end. Not much, if any, is now left but what there is, is too much.